UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANELL TOMASELLA, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>MARS, INC., a Delaware corporation, and MARS CHOCOLATE NORTH AMERICA LLC, a Delaware corporation,<br><br>                Defendants. | Civil Action No. 18-cv-10359-ADB<br><br>*Related Cases:*<br><br>Civil Action No. 18-cv-10269-ADB<br>Civil Action No. 18-cv-10360-ADB |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

    In this putative class action, Plaintiff Danell Tomasella filed suit against Defendants Mars, Inc. and Mars Chocolate North America LLC (together, "Mars") alleging a violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") (Count One) and a claim for unjust enrichment (Count Two) based on Mars' failure to disclose on its product packaging that its chocolate products likely contain cocoa beans farmed by child and slave labor. [See ECF No. 1 (hereinafter "Complaint" or "Compl.")].[1]  Currently before the Court is Mars' motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  [ECF No. 18].

    It is beyond dispute that the use of child and slave labor in the production of cocoa in Côte d'Ivoire (also known as the Ivory Coast) is widespread, reprehensible, and tragic. Moreover, "[t]he fact that major international corporations source ingredients for their products from supply chains involving slavery and the worst forms of child labor raises significant ethical

---

[1] Unless otherwise indicated, ECF citations refer to the electronic docket in Tomasella v. Mars, Inc., 18-cv-10359-ADB (D. Mass.).

questions." McCoy v. Mars USA, Inc., 173 F. Supp. 3d 954, 956 (N.D. Cal. 2016), aff'd, 730 F. App'x 462 (9th Cir. 2018). The question before the Court, however, is whether Mars is liable under Massachusetts law for failing to disclose the labor practices of its suppliers on its product packaging at the point of sale. For the reasons stated below, the Court finds that it is not, and Mars' motion to dismiss is GRANTED.

**I.     BACKGROUND**

Plaintiff's Complaint alleges the following relevant facts, which the Court accepts as true for purposes of this motion. Mars is one of the largest and most profitable food manufacturers in the United States. Compl. ¶ 3. Mars markets and distributes chocolate products that are made with cocoa beans sourced from West Africa, including M&M's, Mars Bars, Snickers, Twix, 3Musketeers, Galaxy, and Milky Way. Id. Some of the cocoa beans that Mars sources from West Africa come from Côte d'Ivoire, where children and forced laborers engage in dangerous tasks while harvesting cocoa, including burning and clearing fields with machetes, spraying pesticides, using sharp tools to break open cocoa pods, and carrying heavy loads of cocoa pods and water. Id. ¶¶ 1–2, 4–7. Some children become laborers after being sold by their parents to traffickers, while others are kidnapped and then sold into conditions of bonded labor. Id. ¶ 7. The children who labor on cocoa farms in Côte d'Ivoire are frequently not paid for their work, forced to work long hours, held against their will on isolated farms, and punished by their employers with physical abuse. Id.

The abuses suffered by children and forced laborers in Côte d'Ivoire are well-documented, and Mars has acknowledged that it sources cocoa in areas where such practices occur. Id. ¶¶ 7– 9, 21, 23–47. In 2001, Mars and other chocolate manufacturers signed the Protocol for the Growing and Processing of Cocoa Beans and Their Derivative Products in a

Manner that Complies with ILO Convention 182 Concerning the Prohibition and Immediate Action for the Elimination of the Worst Forms of Child Labor ("Harkin-Engel Protocol").  Id. ¶ 27.  The Harkin-Engel Protocol sought to develop and implement a public certification program to eliminate the worst forms of child labor in the growing of cocoa beans and their derivative products by July 1, 2005, but to date, Mars and the other signatories have not yet established this system.  Id. ¶¶ 27, 29–31.

Mars does not disclose any information about the child and slave labor practices in its supply chain on its chocolate product packaging at the point of sale.  Id. ¶¶ 48, 50.[2]  Plaintiff, who purchased Mars' chocolate products from various retail stores including CVS in Plymouth, Massachusetts from 2014 through the present, claims that she and other consumers would not have purchased or paid as much for Mars' products had it disclosed the truth about the child and slave labor in its supply chain.  Id. ¶¶ 12, 15, 88.  The Complaint alleges that Mars' omissions are deceptive and unfair under Chapter 93A, and that Mars has been unjustly enriched by its conduct.  Id. ¶¶ 84–85, 91.

Plaintiff filed this lawsuit on February 26, 2018, seeking to represent herself and all other consumers who purchased Mars' chocolate products in Massachusetts in the last four years.  See generally Compl.  Plaintiff also filed substantially similar actions against Nestlé USA, Inc., the Hershey Company, and Hershey Chocolate & Confectionery Corp.  [See Tomasella v. Nestlé USA, Inc., 18-cv-10269-ADB (D. Mass.) (hereinafter "Nestlé Action"), ECF No. 1; Tomasella v. The Hershey Co., 18-cv-10360-ADB (D. Mass.) (hereinafter "Hershey Action"), ECF No. 1].

---

[2] The packaging for Mars' Dove chocolate states that "[w]e buy cocoa from Rainforest Alliance Certified farms, traceable from the farms into our factory."  Compl. ¶ 49.  Rainforest Alliance is a Certification that does not permit child or slave labor, and Plaintiff has excluded Dove chocolate from the Mars chocolate products that are the subject of this lawsuit.  Id.

On April 19, 2018, Defendants in all three cases filed motions to dismiss. [ECF No. 18; Nestlé Action, ECF No. 19; Hershey Action, ECF No. 20]. On June 14, 2018, Plaintiff filed her oppositions to Defendants' motions. [ECF No. 21; Nestlé Action, ECF No. 22; Hershey Action, ECF No. 23]. On July 13, 2018, Defendants in the instant action and the Nestlé Action filed their reply briefs, and on July 17, 2018, Defendants in the Hershey Action filed their reply brief. [ECF No. 25; Nestlé Action, ECF No. 26; Hershey Action, ECF No. 27]. On July 23, 2018, Plaintiff filed a sur-reply brief in all three cases. [ECF No. 28; Nestlé Action, ECF No. 29; Hershey Action, ECF No. 30].

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quotation marks and citations omitted). The facts alleged, taken together, must "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Eldredge v. Town of

4

Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, a claim may be dismissed. Iqbal, 556 U.S. at 679.

### III. DISCUSSION

#### A. Mass. Gen. Laws ch. 93A Claim

Mars seeks dismissal of Plaintiff's Chapter 93A claim. Section 2(a) of Massachusetts General Laws Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Although there is no static definition or precise test for determining whether conduct is unfair or deceptive, "Massachusetts courts have laid out a number of helpful guideposts." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 154 (D. Mass. 2014). "Under Chapter 93A, an act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she]

5

otherwise would have acted.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486–87 (Mass. 2004)). "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers,'" and the "conduct must generally be of an egregious, non-negligent nature." Walsh, 821 F.3d at 160 (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

Mars argues that the Court should dismiss Plaintiff's Complaint because she has not adequately pleaded that Mars engaged in deceptive or unfair conduct or alleged a cognizable injury under First Circuit and Supreme Judicial Court precedent, and because her proposed interpretation of Chapter 93A would regulate Mars' speech in violation of the First Amendment. [ECF No. 19 at 9–20]. Plaintiff responds that she has stated a claim for deception under Chapter 93A by alleging that Mars' failure to disclose child labor in its supply chain is likely to deceive consumers, who do not know about the labor practices at issue, and that the use of such child labor is material to customers making purchasing decisions. [ECF No. 21 at 4–10]. Plaintiff also contends that she has adequately alleged that Mars' conduct is unfair under Chapter 93A because child labor and slavery fall within established international concepts of unfairness, and

6

Mars' failure to disclose its use of such labor is unethical and substantially injurious to consumers. [Id. at 10–12]. Further, Plaintiff claims that the Complaint states a cognizable injury under Chapter 93A because it alleges that Mars' deceptive and unfair conduct caused its customers to receive a product worth less than the one for which they paid. [Id. at 12–16]. Finally, Plaintiff asserts that disclosure of the child and slave labor in Mars' supply chain is reasonably related to Chapter 93A's statutory purpose of preventing consumer deception, is not unduly burdensome, and is consistent with Supreme Court and First Circuit precedent concerning the regulation of commercial speech under the First Amendment. [Id. at 16–19].

1. Deceptive Conduct Under Chapter 93A

Deception liability under Chapter 93A is not limited to false or misleading affirmative statements. "A business may also violate [Chapter] 93A through an omission, as when it 'fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.'" Carlson v. The Gillette Co., No. 14-cv-14201-FDS, 2015 WL 6453147, at *4 (D. Mass. Oct. 23, 2015) (quoting 940 Mass. Code Regs. § 3.16(2)); see also Aspinall, 813 N.E.2d at 487 ("[A]dvertising need not be totally false in order to be deemed deceptive in the context of [Chapter] 93A. . . . The criticized advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." (citations omitted)).

Plaintiff alleges that Mars deceived consumers by failing to disclose the existence of child and slave labor in its supply chain on its product packaging at the point of sale. Compl. ¶¶ 12, 44, 82, 84. She therefore premises her theory of liability on the omission of facts that have nothing to do with the central characteristics of the chocolate products sold, such as their

physical characteristics, price, or fitness for consumption. Moreover, Plaintiff does not claim that Mars has made any false statements about child or slave labor on its product packaging, or that Mars' omissions turned an affirmative representation into a misleading half-truth.[3] The Federal Trade Commission has characterized this type of omission as a "pure omission." See In re Int'l Harvester Co., 104 F.T.C. 949, 1059 (1984) (defining "pure omission" as "a subject upon which the seller has simply said nothing, in circumstances that do not give any particular meaning to his silence").

Neither Plaintiff nor Mars has cited any Massachusetts authority addressing whether pure omissions are actionable under Chapter 93A. In lieu of controlling case law, Plaintiff points to 940 Mass. Code Regs. § 3.16, which provides that:

> an act or practice is a violation of M.G.L. c. 93A, § 2 if . . . [a]ny person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.

Despite the broad language of this regulation, Massachusetts courts have observed that Section 3.16(2) "adds little, if anything, to the provisions of [Chapter 93A] . . . itself," Underwood v. Risman, 605 N.E.2d 832, 836 (Mass. 1993), and have interpreted it to proscribe only nondisclosures that are "likely to mislead consumers acting reasonably under the circumstances." Mayer v. Cohen-Miles Ins. Agency, Inc., 722 N.E.2d 27, 33 (Mass. App. Ct. 2000) (citing Commonwealth v. AmCan Enterprises, 712 N.E.2d 1205 (Mass. App. Ct. 1999)).

Further, Section 2(b) of Chapter 93A mandates that courts, in construing which acts are deceptive under Chapter 93A, must be "guided by the interpretations given by the Federal Trade

---

[3] As described supra at 3 n.2, Mars' Dove chocolate product packaging discloses that Mars "buy[s] cocoa from Rainforest Alliance Certified farms, traceable from the farms into our factory." Compl. ¶ 49. Plaintiff does not allege these affirmative representations regarding Rainforest Alliance Certification are false or misleading half-truths, however, and has excluded Dove chocolate from the Mars chocolate products that are the subject of this lawsuit. Id.

Commission and the Federal Courts to [the Federal Trade Commission Act (FTCA)]," which similarly proscribes "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1) (2017). In In re International Harvester Co., the Federal Trade Commission excepted pure omissions from FTCA deception liability. 104 F.T.C. at 1059. In that case, the Commission considered whether International Harvester, a company that manufactured farm equipment, engaged in deceptive marketing practices when it marketed a gasoline-powered tractor without any comment or warning about a dangerous product feature that resulted in "fuel geysering," a phenomenon in which hot gasoline is forcibly ejected through a cap on a tractor gas tank. See id. at 1051–55. The Commission explained that there are two circumstances where an actionable deception theory can reach a seller's omissions. "First, it can be deceptive to tell only half the truth, and to omit the rest," such as "where a seller fails to disclose qualifying information necessary to prevent one of his affirmative statements from creating a misleading impression." Id. at 1057. Second, it can be deceptive "for a seller to simply remain silent, if he does so under circumstances that constitute an implied but false representation," such as where a misleading impression "arise[s] from the physical appearance of the product, or from the circumstances of a specific transaction, or . . . based on ordinary consumer expectations as to the irreducible minimum performance standards of a particular class of good." Id. at 1058.

The Commission found that International Harvester's conduct was a pure omission and did not fall into either category of actionable omissions because, under the circumstances, the company's silence said nothing deceptive about fuel geysering. See id. at 1059–60, 1062–64. The Commission then held that, although "pure omissions may lead to erroneous consumer beliefs if consumer had a false, pre-existing conception which the seller failed to correct," they are not deceptive under the FTCA for two policy reasons:

> First, we could not declare pure omissions to be deceptive without expanding that concept virtually beyond limits. Individual consumers may have erroneous preconceptions about issues as diverse as the entire range of human error, and it would be both impractical and very costly to require corrective information on all such points. Second, pure omissions do not presumptively or generally reflect a deliberate act on the part of the seller, and so we have no basis for concluding, without further analysis, that an order requiring corrective disclosure would necessarily engender positive net benefits for consumers or be in the public interest.
>
> If we were to ignore this last consideration, and were to proceed under a deception theory without a cost-benefit analysis, it would surely lead to perverse outcomes. The number of facts that may be material to consumers—and on which they may have prior misconceptions—is literally infinite. Consumers may wish to know about the life expectancy of clothes, or the sodium content of canned beans, or the canner's policy on trade with Chile. Since the seller will have no way of knowing in advance which disclosure is important to any particular consumer, he will have to make complete disclosures to all. A television ad would be completely buried under such disclaimers, and even a full-page newspaper ad would hardly be sufficient for the purpose. For example, there are literally dozens of ways in which one can be injured while riding a tractor, not all of them obvious before the fact, and under a simple deception analysis these would presumably all require affirmative disclosure. The resulting costs and burden on advertising communication would very possibly represent a net harm for consumers.

Id. at 1059–60 (footnotes omitted).

Although the Court declines to hold that pure omissions as a matter of law are never actionable under Chapter 93A's deception prong, the Court finds the Commission's omissions framework to be instructive when considering whether a seller's nondisclosures have the potential to mislead Massachusetts consumers under Chapter 93A.[4] The Court here finds that Plaintiff has failed to state a deception claim under Chapter 93A because it is not plausible that Mars' failure to disclose information about the labor practices in its supply chain at the point of sale could have the "capacity to mislead consumers, acting reasonably under the circumstances,

---

[4] The Court "need only be guided by, and not strictly adhere to" the Federal Trade Commission's interpretations of the term "deceptive" under Federal law. Aspinall, 813 N.E.2d at 488; see also V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 416 (1st Cir. 1985) ("Chapter 93A § 2 provides no definition of an unfair or deceptive act or practice, and instead directs our attention to interpretations of unfair acts and practices under the Federal Trade Commission Act as construed by the Commission and the federal courts.").

to act differently from the way they otherwise would have acted (*i.e.*, to entice a reasonable consumer to purchase the product)." Aspinall, 813 N.E.2d at 488. Mars' act of offering chocolate for sale implies that the product is fit for human consumption, see In re International Harvester, 104 F.T.C. at 1058–59, but does not on its own give rise to any misleading impression about how Mars or its suppliers treat their workers. Where Mars has remained silent about its labor practices at the point of sale, it would not be objectively reasonable for a consumer to affirmatively form any preconception about the use of child or slave labor in Mars' supply chain, let alone to make a purchase decision based on any such preconception.[5] Accordingly, Plaintiff's Complaint does not state a claim for deceptive conduct upon which relief could be granted under Chapter 93A.[6]

.        2.        Unfair Conduct Under Chapter 93A

Plaintiff also alleges that Mars' conduct is unfair under Chapter 93A. Although the challenged omissions are not deceptive under Chapter 93A, they may nonetheless be unfair if they "1) [are] within the penumbra of some common law, statutory or other established concept of unfairness, 2) [are] immoral, unethical, oppressive or unscrupulous and 3) cause[] substantial injury to consumers, competitors or other business entities." President & Fellows of Harvard Coll. v. Certplex, Ltd., No. 15-cv-11747-NMG, 2015 WL 10433612, at *2 (D. Mass. Nov. 25,

---

[5] Under Massachusetts law, to survive dismissal, Plaintiff must plausibly allege the potential deception of *reasonable* consumers. Aspinall, 813 N.E.2d at 487–88 (citation omitted). This is a stricter standard than a test which considers whether a practice had the capacity to deceive the general public, which "includes the ignorant, [the] unthinking, and the credulous." See id.

[6] A reasonable consumer might find information about Mars' labor practices important. However, "the law sensibly does not require sellers to disclose all information that a consumer might find important," as "there is a potentially enormous amount of information that at least some consumers might wish to know when deciding whether to purchase or use" any given product. Statement of Acting Chairman Maureen K. Ohlhausen, In the Matter of Lenovo, Inc. (Sept. 5, 2017), https://www.ftc.gov/public-statements/2017/09/statement-acting-chairman-maureen-k-ohlhausen-matter-lenovo-inc (citing In re Int'l Harvester, 104 F.T.C. at 1059).

2015) (citing Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005). While "Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact," that determination is "subject to the court's performance of a legal gate-keeping function.'" Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) (citation omitted).

The Court finds that Plaintiff has failed to allege that Mars' omissions are within the penumbra of any common law, statutory or other established concept of unfairness. Plaintiff argues that Mars' conduct falls within "well-established international concepts of unfairness" because the United Nations' 1948 Universal Declaration of Human Rights, the United Nations' International Labor Convention No. 182, and the Tariff Act condemn child or slave labor. [ECF No. 21 at 10–12]. Plaintiff's Complaint does not allege that Mars violated Chapter 93A by utilizing child and slave labor, however. The crux of her claim is that Mars engaged in unfair conduct by failing to disclose the existence of child and slave labor in its supply chain on the packaging of its products. In other words, Plaintiff is complaining about this omission and not about the underlying conduct.[7] Plaintiff has not identified any common law or statutory authority requiring such disclosure, nor has she set forth any established concept of unfairness tethered to the disclosure of the labor abuses of a manufacturer's supplier. Cf. Hodsdon v. Mars, Inc., 891 F.3d 857, 867 (9th Cir. 2018) (holding that the labeling of products is too far removed from the United Nations' and International Labor Organization's policies to serve as the basis for an unfairness claim under California's Unfair Competition Law).

---

[7] The underlying conduct may fall within the penumbra of the concepts of unfairness established by the United Nations' 1948 Universal Declaration of Human Rights, the United Nations' International Labor Convention No. 182, and the Tariff Act, but that is distinguishable from whether Mars' *omissions* about such conduct are within the penumbra of any common law, statutory or other established concept of unfairness.

Furthermore, the Court finds that Plaintiff has failed to allege that the challenged omissions are immoral, unethical, oppressive or unscrupulous, or that Mars caused substantial injury to its customers. In her Complaint, Plaintiff claims that she and other consumers were injured by Mars' conduct because they would not have purchased nor paid as much for its chocolate products had they known the truth about its labor practices. Compl. ¶ 88. She concedes, however, that Mars has disclosed that its supply chain likely is impacted by child and slave labor. See, e.g., Compl. ¶ 21. Where Mars has made such information readily available to consumers on its website, the absence of such information on its actual product packaging is not immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. See Hodsdon v. Mars, Inc., 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016) ("Given that [plaintiff], like any other consumer, has access to information about the source of Mars' cocoa beans, the absence of such information on the packaging is not 'substantially injurious to consumers' or necessarily immoral."), aff'd, 891 F.3d 857 (9th Cir. 2018).

Thus, the Complaint does not state a claim for unfair conduct upon which relief could be granted under Chapter 93A.[8]

### B. Unjust Enrichment Claim

Count Two alleges a claim for unjust enrichment. "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (citation omitted). To succeed on a claim for unjust enrichment, a plaintiff must show "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the

---

[8] As Plaintiff has failed to allege that Mars' conduct is deceptive or unfair, the Court declines to address whether Plaintiff's Complaint states a cognizable injury under Chapter 93A or whether the First Amendment bars her claim.

defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Mass. Eye & Ear Infirmary, 552 F.3d at 57 (citation omitted).

Mars argues that Plaintiff's unjust enrichment claim must be dismissed because she has an adequate remedy under Chapter 93A and, under Massachusetts law, a plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy is not viable. [ECF No. 19 at 20]. The Court agrees. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (holding that plaintiff's unjust enrichment claim "fails because a party with an adequate remedy at law cannot claim unjust enrichment," and rejecting plaintiff's argument that "if her other claims are dismissed, she effectively has no adequate remedy" because "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment" (citations omitted)). Furthermore, the sum of Plaintiff's unjust enrichment allegations is that "Defendant has and continues to be unjustly enriched as a result of the wrongful conduct" alleged in the Complaint. Compl. ¶ 91. As explained supra at 5–13, Plaintiff has failed to allege that Mars has engaged in wrongful conduct under Chapter 93A, and "[t]he conclusory allegation that [a defendant] 'has been unjustly enriched' is not enough to state a claim for unjust enrichment." Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 56 (D. Mass. 2015), aff'd, 865 F.3d 1 (1st Cir. 2017). Accordingly, Count Two will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Mars' motion to dismiss Plaintiff's claims for a violation of Mass. Gen. Laws ch. 93A (Count One) and unjust enrichment (Count Two) is GRANTED.

**SO ORDERED.**

January 30, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE